188 So.2d 460 (1966)
Joseph L. COLLINS et ux., Plaintiffs-Appellants-Appellees,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants-Appellees-Appellants.
No. 1743.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1966.
Rehearing Denied July 28, 1966.
*461 Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, for defendants-appellants.
Gold, Hall & Skye, by Jimmy M. Stoker, Alexandria, Neblett & Fuhrer, by Robert B. Neblett, Jr., Alexandria, for plaintiffs-appellees.
Before SAVOY, TATE and HOOD, JJ.
HOOD, Judge.
This is a tort action arising out of a two-car motor vehicle collision. One of the automobiles involved was being driven by Mrs. Joseph L. Collins and the other was being driven by Nathaniel L. Ellis. The suit was instituted by Mr. and Mrs. Collins against Ellis and his alleged liability insurer, Fireman's Fund Insurance Company, and also against the insurer of *462 plaintiffs' own automobile, State Farm Mutual Automobile Insurance Company.
Plaintiffs allege primarily that the accident was caused by the negligence of defendant Ellis, that Ellis was an insured under a public liability insurance policy issued by Fireman's Fund, and that he and that insurer are liable in damages. They allege alternatively, and in the event it is determined that Ellis was not insured at the time of the accident, that their own insurer, State Farm, is responsible under an "uninsured motorist" provision in the policy. State Farm filed an answer and a third party demand against Ellis, demanding judgment against the latter for any amount which State Farm may be condemned to pay.
Fireman's Fund filed a "Motion for Summary Judgment," praying that the suit be summarily dismissed as to that company on the ground that at the time the accident occurred Ellis was not covered by any policy which it had issued. State Farm thereupon filed an opposition to the motion for summary judgment. After hearing, this motion was granted and a summary judgment was rendered by the trial court dismissing the suit as to Fireman's Fund. State Farm has appealed.
The basic question presented is whether defendant Ellis was an "insured" under a liability policy issued by Fireman's Fund at the time the accident occurred. If he was an insured under any such policy, then Fireman's Fund should be required to remain in the suit as a party defendant. But, if Ellis was not an insured of Fireman's Fund at that time, then the latter is entitled to a judgment of dismissal. This appeal, of course, is from a summary judgment of dismissal, and the rules relating to summary judgments are applicable.
The summary judgment remedy is not a substitute for a trial, and it may not be resorted to when there is a genuine issue of material fact which must be resolved. In passing upon a motion for summary judgment, the function of the court is not to determine the merits of the issues raised, but rather it is to determine whether there is a genuine issue of a material fact. The burden of showing that there is not a genuine issue as to a material fact is upon the mover for the summary judgment, with all doubts to be resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts. Aymond v. Missouri Pacific Railroad Company, La.App. 3 Cir. 179 So. 2d 460.
The summary judgment appealed from in this case was based on facts which were established by the pleadings, by answers to interrogatories and by affidavits. This evidence shows that the accident which gave rise to this suit occurred on December 11, 1964. At that time, Mr. and Mrs. Ellis were married and were living together in Alexandria, Louisiana. Mrs. Ellis is the daughter of Ervin B. Fisher, who resides in Florida. Mr. Ellis was not a resident of the household of his father-in-law, Mr. Fisher, at the time the accident occurred.
Sometime prior to the date of the accident, Mr. Fisher purchased a 1961 Ford convertible, which he furnished to Mrs. Ellis, his daughter, "for her sole and exclusive use." The title to this automobile was registered in the name of Mr. Fisher, and a public liability insurance policy was issued by Fireman's Fund covering that particular automobile and showing Mr. Fisher as the "named insured." This policy was in effect at the time the accident occurred. Although the title to the 1961 Ford convertible was registered in the name of Mr. Fisher, and he was the "named insured" in the policy issued by Fireman's Fund, Mrs. Ellis has had the full and complete use of the car. She, in fact, has kept the car with her in Louisiana, where she resides with her husband.
When Mr. Fisher furnished this 1961 Ford convertible to his daughter for her *463 exclusive use, he specifically informed Mr. and Mrs. Ellis that the car was not to be driven by Mr. Ellis. Mr. Fisher stated, by affidavit, that to the best of his knowledge that car was not used by Nathaniel L. Ellis at any time on or before December 11, 1964.
At the time the accident occurred, Mr. Ellis was driving a 1962 Corvair Monza automobile, which was owned by John A. Lalley, and was being driven by Ellis with Lalley's permission. There was no insurance policy in effect covering the Lalley car, as an "owned automobile," at the time the accident occurred. Mr. Ellis states in an affidavit, however, that the 1961 Ford convertible, which had been furnished to his wife by her father, was "out of service" because he was doing some repair work on it.
State Farm contends that Ellis was an "insured" under the Fireman's Fund policy because the 1962 Corvair which he was driving was a "temporary substitute automobile" for the 1961 Ford convertible which was specifically covered by that policy. The trial judge held that the car involved in the accident was not a "temporary substitute automobile" for the insured car, and thus that no coverage was provided by the Fireman's Fund policy. He concluded that the evidence showed, beyond any genuine issue of fact, that Ellis did not have the permission of Fisher to drive the insured 1961 Ford automobile, that Ellis was not an "omnibus insured" under the Fireman's Fund policy, and that he did not have the authority to borrow a substitute for the insured car. He further held that even if Ellis did have the express or implied permission of Fisher to use the 1961 Ford, that permission went no further than to use the automobile, and it did not include authority to borrow a substitute.
Under the provisions of the insurance policy issued to Fisher by Fireman's Fund, the insurer obligates itself:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: (a) Bodily injury, sickness or disease including death resulting therefrom hereinafter called `bodily injury' sustained by any person; * * * arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * *"
The persons insured under that contract are defined in the policy as follows:
"Persons insured: the following are insureds under part one:
(a) With respect to the owned automobile,
(1) The named insured and any resident of the same household. * *"
* * * * * *
"`named insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household; * * *"
The term "owned automobile," as used in the policy, is defined as including a "temporary substitute automobile." With reference to a temporary substitute automobile, the policy provides:
"`Temporary substitute automobile' means any automobile or trailer not owned by the named insured while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of a breakdown, repair, servicing, loss or destruction."
State Farm argues, among other grounds for the motion for summary judgment, that "Barbara Fisher Ellis was really the named insured to the knowledge of Fireman's Fund Insurance Company's agent * * *, and therefore her husband Nathaniel Ellis, who was residing in the same household with her, was also a named insured." It takes the position that it has the right to have *464 the policy reformed to show the true intention of the parties, that is, that Mrs. Ellis is actually the named insured in the policy. And it argues that since Mr. Ellis, as her spouse residing in the same household, is also a named insured he had the right to withdraw the 1961 Ford from service and to temporarily substitute the 1962 Corvair Monza for it.
In Maggio v. State Farm Mutual Automobile Insurance Co., La.App. 1 Cir., 123 So.2d 901 (cert. denied), where a similar issue was presented, our brothers of the First Circuit Court of Appeal said:
"The insurer is therefore bound by the knowledge of the true intention of the parties that the insurance policy was issued for the protection also of Gill as an additional named insured. Boyd v. American Fire & Casualty Company, La. App. 2 Cir., 50 So.2d 688; Pacific Finance Co. v. Granite State Fire Ins. Co., La.App. 2 Cir., 45 So.2d 378; Monroe Air Park No. 1 v. American Aviation, etc, Ins. Co., La.App. 2 Cir., 41 So.2d 795. For if an insurance policy within the actual intention of the parties is issued for the protection of another than the named insured, the insurer may be held to have afforded such protection by the policy, or to be estopped to deny it; and the policy may be equitably reformed to show the true intention of the parties in this regard. Christo v. Eagle Star Ins. Co., 232 La. 28, 93 So.2d 682; Randazzo v. Insurance Co., etc., 196 La. 822, 200 So. 267; Dutton v. Harmonia Ins. Co., 191 La. 72, 184 So. 546; Pope-Gammill Lumber Co. v. Zurich Gen. Acc. & Liab. Ins. Co., 168 La. 422, 122 So. 278; Churchman v. Ingram, La.App. 2 Cir., 56 So.2d 297; Crowell v. New Hampshire Fire Ins. Co., La.App. 2 Cir., 147 So. 762." (Emphasis added.)
The Maggio case, supra, was cited with approval and followed by our Supreme Court in Richard v. United States Fidelity & Guaranty Company, 247 La. 943, 175 So.2d 277, where a contract of insurance was reformed to show the true intent of the parties. In that case, the court said:
"Having found that the intended insured were the Landreneau interests, supra, we conclude that a mutual mistake existed between the insurer and the insured; such mistake was one of terminologydesignating the insured as only `Adraste Landreneau Gins, Inc., Mamou, Louisiana', instead of the interests, supra. There is ample authority for the reformation of insurance contracts where, by reason of mutual mistake, the policy as written does not express the actual intent of the parties. The instant policy must therefore be reformed or corrected to recite the true intention of Adraste Landreneau, now deceased, and all his successors. Maryland Casualty Company v. Kramel, La.App., 80 So.2d 897; Easley v. Boston Insurance Company, La.App., 132 So.2d 654."
The evidence which was presented at the hearing in the instant suit indicates that at the time the policy was issued the agent of Fireman's Fund who negotiated with Fisher had knowledge of the fact that the insurance was being procured for the protection of Mrs. Ellis, rather than the person named in the policy as the named insured. An affidavit executed by Mr. Fisher and filed in evidence recites:
"That he is the father of Barbara Ellis Fisher, wife of Nathaniel L. Ellis; that on December 11, 1964, he was the owner of a 1961 Ford Sunliner Convertible automobile which he had furnished to his daughter for her sole and exclusive use; that this automobile had been insured against public liability with Fireman's Fund Insurance Company; that after discussing this insurance with his insurance agent, it was his belief that an additional premium would be required in the event any person drove the automobile other than his daughter, Barbara Ellis Fisher; that, accordingly, he gave specific instructions that she and she *465 alone was to drive the automobile and he gave specific instructions that his son-in-law, Nathaniel L. Ellis, was not to drive the automobile and the automobile was provided to his daughter with the specific understanding that Nathaniel L. Ellis would not use the automobile and, to the best of his knowledge, it was never used by Nathaniel L. Ellis at any time on or before December 11, 1964; that he never authorized Nathaniel L. Ellis to borrow a 1962 Corvair Monza automobile belonging to John A. Lalley for his account or on his behalf, and on December 11, 1964, if Nathaniel L. Ellis was using a 1962 Corvair Monza automobile belonging to John A. Lalley, it had been obtained and was being used for the sole account of Nathaniel L. Ellis." (Emphasis added.)
Several affidavits which appear in the record recite that Mrs. Ellis has had the sole use and control of the automobile since it was furnished to her, and they indicate that this circumstance existed at the time the Fireman's Fund policy was issued on February 25, 1964. It would be reasonable to assume that this was one of the facts which Mr. Fisher discussed with his insurance agent when the policy was obtained.
Also, attached to a pleading filed by State Farm is a statement which allegedly was made and signed by defendant Ellis on July 26, 1965, in which he refers to the 1961 Ford convertible as "my car," and then as to "my wife's car before I married her, but it was registered in her father's name."
Our review of the receivable evidence which was presented at the hearing convinces us that there is a genuine issue of fact as to whether the parties to the insurance contract actually intended to provide protection primarily for Mrs. Ellis, rather than to Mr. Fisher. If plaintiffs or State Farm are able to establish that fact at a trial on the merits, then under our established jurisprudence they may be entitled to judgment reforming the policy to show that Mrs. Ellis is the real or actual insured person under that policy. Mr. Ellis, as her spouse residing in the same household, then would also be a named insured and as such he would have the right to withdraw the "owned automobile" from service and to substitute another in its place.
In view of the established rule that all doubts are to be resolved against the granting of a summary judgment and in favor of a trial on the merits, we have concluded that the summary judgment of dismissal which was rendered in this case should be reversed and that the case should be remanded to the trial court for further proceedings consistent with the views herein expressed.
Since we have decided that the case should be remanded on one of the grounds urged by State Farm, it is not necessary for us to consider the other reasons which it assigned to support its argument for reversal. We particularly express no opinion on the legal question of whether coverage under a policy similar to the one involved here extends to a substitute automobile, when a person who is using the insured vehicle with permission of the named insured withdraws it from service because of the need of repairs and substitutes another vehicle for it, without the express authorization of the named insured to make such a substitution.
For the reasons herein assigned, the summary judgment appealed from is reversed, and this case is remanded to the trial court for further proceedings consistent with the views herein expressed. The costs of this appeal are assessed to the defendant-appellee.
Reversed and remanded.