|!YELVERTON, Judge.
This appeal by Safeway Insurance Company raises issues of insurance coverage, fault, and damages arising out of an automobile accident. We reverse.
IzFACTS
Wilda and Cleo Stanley were involved in an automobile accident with Melinda Willis in Allen Parish. Cleo was driving a pickup truck that was registered in Wilda’s name. Melinda Willis was driving her car.
Wilda applied to Safeway Insurance Company for liability insurance on the pickup truck in late 1992. She was issued a month-to-month policy. The accident happened on July 22, 1993. Safeway denied that there was a policy in effect on that date.
Three separate suits were filed and consolidated in the trial court before trial. Wilda settled with Willis’ insurer, State Farm Automobile Insurance Company, for her personal injuries. The only claims left were Wilda’s claim against Willis and Safeway for her personal injuries, a claim by Willis against the Stanleys for property damage to the Willis vehicle, and a claim by the Stanleys against State Farm for the property damage to their truck.
After trial, the court found that there was coverage under Safeway’s policy. The trial judge found Cleo and Willis to be equally at fault for the accident. The court awarded $25,000 to Wilda in general damages.
Safeway appeals alleging that there was no coverage for this accident, that Cleo should not have been held 50% at fault, and that Wilda did not suffer general damages in the amount of $25,000. Reversing on the issue of coverage, we will not address fault and damages.
| ¡¡COVERAGE
Safeway claims that this was a month-to-month policy which had lapsed on July 22, 1993, when this accident happened, and that therefore there was no coverage. It claims that a premium payment was not *953 made in time to activate coverage for July 22, 1993. We agree.
The testimony of Janice Burghdoff, Safeway’s underwriting supervisor, explained Safeway’s method of applying premium payments for month-to-month policies. She testified that a renewal premium notice was sent every month to the insured. This notice would indicate the date of the expiration of the current policy period. When the insured sent the payment back to Safeway, Safeway would stamp the date on the notice showing when it received the payment in its office. Safeway would issue a renewal certificate to the insured indicating the new policy period dates.
She went on to explain that, pursuant to an internal company policy, Safeway considered payment received the date after it was postmarked. If there was no postmark, it considered payment received the day after the date on the check or money order constituting the payment. That was the date used to determine when the new policy period began.
The evidence in the record confirms that this practice was employed consistently. The evidence in the record consists of details of three successive one-month policy periods. The first had an inception date of May 21, 1993, and a termination date of June 21, 1993. The second began on June 22, 1993, and ended on July 22, 1993. The third had an inception date of July 23, 1993, and a termination date of August 23, 1993. The time of day that coverage began or ended was 12:0114a.m. As can be seen on the three certificates of insurance in the record, between the first and second policy periods and again between the second and third policy periods, there was a lapse of one day. This was because, in each instance, Wilda did not mail the premium until the very day that the previous coverage had expired. She mailed the premium due for the second one-month policy on June 21. It was received by Safeway on June 25. However, because the envelope was not postmarked, the policy was reinstated the day after the cheek was written, in accordance with Safeway’s normal practice, which meant that it was reinstated on June 22. The same thing happened the next month: Wilda mailed the premium on July 22, after the policy had expired, and it was postmarked on that day. Following its practice, Safeway reinstated the policy with an inception date the day after the postmark, or July 23. The accident happened on July 22, the very day on which the policy expired at 12:01 a.m. that morning.
On the back of each renewal certificate appeared the language: “Payment shall be considered as having been made upon receipt and acceptance of the premium at the Company Office and not at the time of mailing by the insured.” In other words, receipt of payment, not the date of mailing, would determine the inception date of a reinstated policy and would also determine whether the policy was renewed or reinstated. Safeway’s internal practice in the case of a reinstatement was to date the inception the next date after a postmark. In the absence of a postmark, the practice was to date the inception the next day after the date on the check or money order. We do not interpret this practice as being inconsistent with the language appearing on the back of its renewal certificate. The insurance contract itself issued |5by Safeway required only that the premiums be paid on or before the effective date of the next policy period to effect a renewal, as follows:
This policy may be renewed for successive policy period by payment of the required premium to the company on or before the effective date of such successive policy period. If such premium is not paid when due the policy shall terminate as of that date and such date shall be the end of the policy period.
The parties had not entered into a contract regarding the inception date of reinstated policies. Safeway’s method of applying late premium payments for month-to-month policies was a means by which both parties to the insurance contract would know or could determine the inception date of every reinstatement.
The trial court concluded that, based on the language of the insurance contract, the May 21 to June 21 policy expired on June 21 for lack of timely payment. The premium check written on June 21,1993, was received by Safeway on June 25,1993. The trial court *954 held that Safeway could not back date the insurance coverage, and therefore, the next month of coverage had to be from June 25, 1993 to July 25, 1993. Thus, the trial court found that there was coverage on the date of the accident, July 22,1993.
The trial judge’s changing of the dates of inception and termination of the second one-month policy — June 22, 1993 to July 22, 1993 — was an attempt to reform that policy after it had run its course. That aleatory contract had been performed and was over and done with. Wilda had paid the premium for one month and Safeway had taken the risk for that month. Both parties knew precisely the inception date and the termination date. In Youngblood v. Allstate Fire Ins. Co., 349 So.2d 462 (La.App. 3 Cir.1977), this court dealt with a demand by an insurer to reform a policy to reflect a different inception date. The court rejected the demand lefinding that the inception date was not the result of a mutual mistake which would justify reformation of the insurance contract to reflect the actual intent of the parties. The court said that “[o]ne seeking to reform a contract to reflect a common intention has the burden of proving that there was mutual mistake.” Id., at 465.
In this case there was no mutual mistake which would allow reformation of the insurance contract. Wilda received the renewal certificate indicating a policy period of June 22, 1993 to July 22, 1993, terminating at 12:01 a.m. By the time she would have read the language on the renewal certificate, she was already aware of the policy period. She knew she had to pay on or before July 22, 1993 at 12:01 a.m. to renew her coverage for another policy period. She failed to do so. We cannot now reform a policy that has expired when there was no mistake as to its effective dates.
We also find that this was not impermissible back dating of an insurance policy. It is not permissible to back date a life insurance policy. La.R.S. 22:171. However, there is no provision prohibiting an automobile insurer from establishing a policy for acceptance of renewal premiums and their effective dates. See Soileau v. Louisiana Farm Bur. Cas. Ins. Co., 476 So.2d 1098 (La.App. 3 Cir.1985). In essence, Safeway does not back date a policy. Safeway’s internal policy is applied in the case of an existing policy that is either being renewed or reinstated. Once the insured mails the premium, Safeway’s internal practice provides a consistent, dependable means of ascertaining the inception date of reinstated month-to-month policies. We find nothing wrong with this procedure.
For the above reasons, the judgment of the trial court is reversed. Costs of this appeal are assessed to Wilda and Cleo Stanley.
REVERSED.